## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **CARMEN RECINOS,** | ) | |
| **5803 Coolidge Street** | ) | |
| **Capital Heights, MD 20743** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No.** |
| | ) | |
| **GALI SERVICE INDUSTRIES, INC.,** | ) | |
| ***and its successors and assigns*** | ) | |
| **12312 Wilkins Avenue** | ) | |
| **Rockville, MD 20852** | ) | |
| | ) | |
| **THE GSI GROUP,** | ) | |
| **12312 Wilkins Avenue** | ) | |
| **Rockville, MD 20852** | ) | |
| | ) | |
| **FRANCISCO J. GALI, JR.,** | ) | |
| **10109 Garden Way** | ) | |
| **Potomac, MD 20854-3966** | ) | |
| | ) | |
| **FRANCISCO GALI, SR.,** | ) | |
| **6504 Smoot Drive** | ) | |
| **McLean, VA 22101-4003** | ) | |
| | ) | |
| **JOHN DOE CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### COMPLAINT FOR DECLARATORY
### AND MONETARY RELIEF AND JURY DEMAND

Plaintiff Carmen Recinos ("Plaintiff"), by and through her undersigned attorney, files this

Complaint for declaratory and monetary relief against Gali Service Industries, Inc. ("GSI"); the

GSI Group ("GSI Group"); Francisco J. Gali, Jr., the director and CEO of GSI; Francisco Gali,

Sr., president of the GSI Group; and Defendant John Doe Corporation, the corporate entity that

has taken over operations from GSI since approximately September 2018, to seek redress for

violations of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the District of Columbia Human Rights Act, D.C. Code §§ 2-1402.01, *et seq.* ("DCHRA"), for the common law tort of negligent supervision, and for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201*, et seq.* ("FLSA"), the District of Columbia Minimum Wage Revision Act, D.C. Code §§ 32-1001, *et seq.* ("DCMWRA"), and the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32-1301, *et seq.* ("DCWPCL").

Defendants subjected Plaintiff to sexual harassment and assault when Plaintiff's supervisor made inappropriate comments to Plaintiff and ultimately sexually assaulted her.  After Plaintiff reported the harassment to management, Defendants failed to take any corrective action and allowed Plaintiff's supervisor to continue his egregious harassment that escalated to assault, and condoned his behavior.  As a direct result of Defendants' repeated failures to act, Plaintiff's supervisor violently attacked Plaintiff, leaving her bruised, battered, and requiring medical attention.  Plaintiff called the police to report the assault of her co-worker and her own assault, and, upon information and belief, her supervisor was ultimately charged and convicted for those attacks.  Days after she was sexually assaulted in the workplace and contacted the police regarding the attacks by her supervisor, Defendants terminated Plaintiff's employment, explicitly stating that her complaints of assault and harassment formed the basis of their decision to terminate her.  Defendants also retaliated against Plaintiff in violation of Title VII and the DCHRA by attempting to threaten and intimidate the Plaintiff to deter her from reporting the harassment.  Thus, Defendants discriminated against Plaintiff based on her sex and retaliated against her in violation of Title VII and the DCHRA.

Defendants also negligently supervised the supervisor who harassed and assaulted Plaintiff. Defendants had knowledge of the supervisor's connection to a gang and of his

harassment and assault of another employee and harassment of Plaintiff, but did nothing to address Plaintiff's complaints, continued to employ the supervisor, and failed to separate him from Plaintiff, thereby creating the conditions that allowed him to harm Plaintiff.  Finally, Defendants also violated the FLSA, the DCMWRA, and the DCWPCL when they failed to pay Plaintiff for 120 hours of work, including 20 hours of overtime.

Plaintiff seeks to recover all wages, employment benefits, and other compensation lost or denied due to Defendants' violations and negligent supervision, as well as compensatory damages, punitive damages, attorneys' fees and costs, pre-and post-judgment interest, and any other legal or equitable relief this Court deems just and proper to redress Defendant's unlawful actions.

## JURISDICTION AND VENUE

1.      This Court maintains subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1988(a), 28 U.S.C. § 1343(a), and 28 U.S.C. § 1331 because Plaintiff's action addresses the vindication of her civil rights and contains a federal question, as it arises under the laws of the United States, specifically Title VII and the FLSA.

2.      This Court maintains supplemental jurisdiction over Plaintiff's claims arising under the laws of the District of Columbia, the DCHRA, the  DCMWRA, and the DCWPCL, pursuant to 28 U.S.C. § 1367(a) because the claims are part of the same case or controversy as those arising under Title VII and the FLSA.

3.      This Court maintains personal jurisdiction over Defendant GSI because Defendant GSI, at all times relevant to this Complaint, purposely availed itself of the privilege of conducting employment activities within the District of Columbia, is currently registered in the District of Columbia for the purpose of conducting business in this district, and Defendant GSI's acts and omissions alleged herein occurred in the District of Columbia.  At all times relevant to

3

this Complaint, Defendant GSI operated in the District of Columbia, including at 316 Pennsylvania Avenue SE, Washington, DC 20003.

4.      This Court maintains personal jurisdiction over Defendant GSI Group because Defendant GSI Group, at times relevant to this Complaint, purposely availed itself of the privilege of conducting employment activities within the District of Columbia, and Defendant GSI Group's acts and omissions alleged herein occurred in the District of Columbia.  At the times relevant to this Complaint, Defendant GSI Group operated in the District of Columbia, including at 316 Pennsylvania Avenue SE, Washington, DC 20003.

5.      The Court maintains personal jurisdiction over Defendant John Doe Corporation, which has, upon information and belief, taken over operations from Defendants GSI and the GSI Group in or around September 2018 and operates in the District of Columbia.

6.      The Court maintains personal jurisdiction over Defendant Francisco Gali, Jr., who, at the times relevant to this Complaint, operated Defendant GSI in the District of Columbia, including at 316 Pennsylvania Avenue, SE, Washington, DC 20003 and Defendant John Doe Corporation. The acts or omissions of Francisco Gali, Jr. alleged herein occurred in the District of Columbia.  Upon information and belief, as director and CEO of Defendant GSI, Defendant Francisco Gali, Jr. caused Defendants GSI and John Doe Corporation to register to do business in the District of Columbia.

7.      The Court maintains personal jurisdiction over Defendant Francisco Gali, Sr., who is president of the GSI Group, which at all times relevant to this Complaint operated in the District of Columbia, including at 316 Pennsylvania Avenue, SE, Washington, DC 20003.  Upon information and belief, as President of GSI Group, Defendant Francisco Gali, Sr. also caused

Defendant GSI Group to do business in the District of Columbia and his acts or omissions alleged herein occurred in the District of Columbia.

8.      At all times relevant to this Complaint, Defendants employed over 500 employees and engaged in an "industry affecting commerce" within the meaning of 42 U.S.C. §§ 2000e(b) and (h).

9.      At all times relevant to this Complaint, Defendants engaged in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A)(i).

10.      Venue is proper in the United States Court for the District of Columbia, pursuant to 28 U.S.C. § 1391(b)(1) because the entity Defendants are subject to this Court's personal jurisdiction and are residents of the District of Columbia.

11.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia.

## PARTIES

12.      Plaintiff, Carmen Recinos, worked as a cleaner for Defendants between January 2016 and approximately July 8, 2016 at 316 Pennsylvania Avenue, SE, District of Columbia, 20003 ("316 Pennsylvania").

13.      At all times relevant to this Complaint, Plaintiff was Defendants' employee within the meaning of Title VII, 42 U.S.C. § 2000e(f); the DCHRA, D.C. Code § 2-1402.01; the FLSA, 29 U.S.C. § 203(e); the DCMWRA, D.C. Code § 32-1002(2); and the DCWPCL, D.C. Code § 32-1301(2).

14.      Plaintiff is a female adult resident of Maryland, who was subjected to sexual harassment, assault, and retaliation while working for Defendants in the District of Columbia.

15.     Plaintiff was employed in the District of Columbia within the meaning of D.C. Code § 32-1003(b) because Plaintiff regularly spent more than 50 percent of her working time in the District of Columbia during her employment with Defendants.

16.     Defendant Gali Service Industries, Inc. is a Maryland corporation that does business in the District of Columbia by providing janitorial/custodial and building maintenance services.   Defendant Gali Service Industries, Inc. is currently registered to do business in the District of Columbia.

17.     Upon information and belief, Gali Service Industries, Inc. is a subsidiary corporation of the GSI Group.

18.     Upon information and belief, Defendant John Doe Corporation has taken over the operations of Defendant Gali Service Industries as of approximately September 2018, including continuing the use of company equipment and employees.

19.     Upon information and belief, Defendant Francisco Gali, Jr. is the director and CEO of GSI.

20.     Upon information and belief, Defendant Francisco Gali, Sr. is the president of GSI Group.

21.     At the times relevant to this Complaint, Defendants had and exercised both actual and apparent authority to hire and fire Plaintiff, direct and supervise Plaintiff's work, and bind and set wage and hour policies applicable to Plaintiff.

22.     At the times relevant to this Complaint, Defendant GSI provided services at multiple worksites located in the District of Columbia, including at 316 Pennsylvania Avenue SE.

23.     Defendants are employers within the meaning of Title VII, 42 U.S.C. § 2000e(b); the DCHRA, D.C. Code § 2-1402.01; the FLSA 29 U.S.C. § 203(d); the DCMWRA, D.C. Code § 32-1002(3); and the DCWPCL, D.C. Code § 32-1301(1B).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24.     Plaintiff exhausted administrative remedies as required before filing this action.

25.     At the times relevant to this Complaint, there existed work-sharing agreements between the Equal Employment Opportunity Commission ("EEOC") and the District of Columbia Office of Human Rights ("DCOHR"), and state and federal law allows that filing with one administrative Agency constitutes filing with the other for purposes of ultimately filing suit.

26.     On or about April 17, 2017, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the District of Columbia Office of Human Rights ("DCOHR") alleging discrimination and retaliation on the basis of her sex, in violation of Title VII and the DCHRA.

27.     At the request of Plaintiff, the EEOC issued a notice of right to sue without issuing a finding.  More than 180 days had passed since the filing of Plaintiff's charge.

28.     Plaintiff received the notice of right to sue on November 7, 2018.

29.     All conditions precedent to the filing of this lawsuit have been performed or have occurred as required by Title VII, 42 U.S.C. § 2000e-5 and the DCHRA, D.C. Code § 2-1403.

## FACTS

30.     Defendant Gali Service Industries, Inc. hired Plaintiff in or about January 2016 as a cleaner.

31.     Plaintiff worked for Defendants from approximately January 2016 until the date of her termination, on approximately July 8, 2016.

32.     Plaintiff typically worked from about 5:00 pm to 9:00 pm, five days per week, from Monday through Friday.

33.     Plaintiff's rate of pay was $11.50 per hour.

34.     Defendants assigned Plaintiff to clean the office building located at 316 Pennsylvania Avenue, SE, Washington, DC 20003.

35.     Plaintiff's duties included taking out the trash from individual offices in the building, including the National Capital Bank, vacuuming, dusting, emptying trash cans, and cleaning the kitchens on various floors of the building.  Plaintiff also sometimes cleaned bathrooms when the employee who typically performed those duties needed assistance.

36.     Beginning in approximately June 2016, Maisel Omar Lainez was Plaintiff's immediate, on-site supervisor.

37.     Plaintiff's second-line supervisor was Lisette, who did not work at the same site. Lisette was Mr. Lainez's direct supervisor.

38.     Mr. Lainez delivered Plaintiff's paychecks to her at 316 Pennsylvania Avenue, SE on a bi-weekly basis.

39.     During Plaintiff's employment, Defendants did not provide Plaintiff with any type of written or verbal anti-harassment policy.  Lisette told Plaintiff to report any issues at the worksite to the on-site supervisor, or to call her.

40.     Each night during her shift, Plaintiff had to wait for Mr. Lainez, who had the keys to enter certain office spaces, to open the doors so she could begin cleaning offices.

41.     Upon information and belief, in addition to Plaintiff, approximately two other employees worked under Mr. Lainez's supervision at the same location and during the same work shift.

42.     Shortly after Mr. Lainez began working for Defendants in or about June 2016, he subjected Plaintiff to several incidents of unwelcome sexual harassment.

43.     For example, Mr. Lainez made sexually motivated comments to Plaintiff, such as stating in Spanish words to the effect of, "I like you" and "We could have a secret relationship." Mr. Lainez also asked Plaintiff words to the effect of "why don't we have something?" and stated he wanted to "kiss [Plaintiff's] thick lips." Mr. Lainez also told Plaintiff words to the effect of "You have a great body." Mr. Lainez's behavior made Plaintiff extremely uncomfortable.

44.     At times, Mr. Lainez would sit and observe Plaintiff as she cleaned. This surprised Plaintiff, as she knew Mr. Lainez oversaw other employees. Mr. Lainez would try to engage with Plaintiff by unplugging the vacuum while she was using it, turning off the lights, or sneaking up on her to scare her.

45.     Mr. Lainez's comments and actions made Plaintiff very uncomfortable and Plaintiff made her discomfort evident to Mr. Lainez through her demeanor and body language.

46.     Plaintiff also expressly and repeatedly rejected Mr. Lainez's advances, including telling him that she was married and that she just wanted to work.  Mr. Lainez told Ms. Recinos to cheat on her husband with him. Plaintiff attempted to call Lisette multiple times to report these comments, including in early June 2016, shortly after Mr. Lainez began to work for Defendants, but Lisette never answered her calls. Plaintiff left voicemails and sent various text messages, but Lisette did not respond to her messages.

47.     In late June 2016, Plaintiff called Lisette and informed her of the inappropriate comments Mr. Lainez made to her at work.  Lisette laughed at Plaintiff's complaint and said to Plaintiff words to the effect that there was something "wrong" with Plaintiff because every woman likes it when a man thinks she is pretty.  Plaintiff told Lisette that she was not flattered, and stated that she wanted to do her job without being harassed every day by her supervisor. Lisette took no action to address Mr. Lainez's behavior or to otherwise address Plaintiff's complaints.

48.     Mr. Lainez also abused his power as Plaintiff's supervisor by repeatedly and aggressively asking her to borrow money.  On one occasion, Mr. Lainez threw a yellow bucket across the floor in her direction when she refused to loan him $200. The bucket nearly hit Plaintiff.

49.     On or about July 6, 2016, Plaintiff was taking out the trash when Mr. Lainez knocked on the door of the room and asked Plaintiff to let him into the room.  Plaintiff opened the door, then continued working.  While her back was turned, Mr. Lainez snuck up behind Plaintiff and wrapped his arms tightly around her.  He grabbed her breasts forcefully as he restrained her, and squeezed her vagina over her clothing.  He put his mouth on Plaintiff's neck and chest and bit her neck and arm, leaving visible marks.  Mr. Lainez threw Plaintiff against a wall, pushed her onto the floor, and attempted to rip off her clothing.  Mr. Lainez then unbuckled his belt, unbuttoned his pants, and pulled his zipper down.  Plaintiff screamed in fear.

50.      Mr. Lainez tore Plaintiff's shirt, and pushed her bra aside and touched her breasts.  When she fell to the floor, Plaintiff slammed her head against a hard surface, injuring herself.  Plaintiff tried to escape, and when she tried to pull her arms away from Mr. Lainez's grip, he scratched her arms with his nails.

51.     Mr. Lainez told Plaintiff that if she reported the incident to the police, she would be sorry.  He stated that he had friends and family who were in La Mara (a nickname for the gang Mara Salvatrucha 13, or MS-13).  He added that no one would believe Plaintiff if she reported the assault, and that her life and her family's life would be in danger if she called the police.

52.     Plaintiff finally managed to escape, and began to dial a number on her phone while she ran into the elevator and out of the building. She was crying and shaking.  As she was leaving, she saw a co-worker, Ms. Lilian Martinez, who asked her what was wrong.  Plaintiff told Ms. Martinez that she had been sexually assaulted by Mr. Lainez.

53.     Plaintiff learned that Mr. Lainez had also harassed and assaulted Ms. Martinez.

54.     That same day, Plaintiff attempted to report the assault to Lisette.  Plaintiff left several voicemails and text messages for Lisette, but Lisette did not respond.

55.     On or about July 7, 2016, Plaintiff again called Lisette to tell her about her about the attack and Mr. Lainez's ongoing harassment.  Finally, Lisette called Plaintiff back and Plaintiff informed her that she feared going to work because Mr. Lainez would be there.  Lisette told Plaintiff to go to work anyway, and told Plaintiff that she would speak to Mr. Lainez about his recent actions and promised to meet with Plaintiff about the incident, but never did.

56.     Later on July 7, Plaintiff followed Lisette's instructions and went to work.

57.     While Plaintiff was on the fourth floor, about to enter an office to clean it, she heard the elevator door open, and turned around to see who was there.  Inside the elevator, Plaintiff observed Mr. Lainez forcing himself upon Ms. Martinez and touching her.  She observed Ms. Martinez crying and trying to escape his grasp.  Plaintiff made eye contact with Ms. Martinez, and saw Ms. Martinez break free from Mr. Lainez's grasp and run toward her.

58.     Mr. Lainez remained in the elevator.

59.     Plaintiff yelled at Mr. Lainez and asked him why treated her and Ms. Martinez so poorly.  To try to keep Mr. Lainez from pursuing them, Ms. Recinos told Mr. Lainez that she and Plaintiff were going to call the police. Mr. Lainez grew furious and said that no one would believe them if they reported him.  He threatened Plaintiff and Ms. Martinez, stating that if they reported him, he had friends and family in a gang and that he would send them to kill Plaintiff and Ms. Martinez.  Ms. Lainez also stated that immigration would be notified if Plaintiff and Ms. Martinez called the police.

60.     Plaintiff and Ms. Martinez hid in a nearby empty office.

61.     Plaintiff heard Ms. Martinez make a phone call, then, they called the police on Ms. Martinez's phone, but Plaintiff did most of the talking to the operator.

62.     Plaintiff spoke with the police by telephone and remained in the office with the door closed while she and Ms. Martinez waited for the police.  Plaintiff waited until she could see the police pulling up through the windows that overlooked the street, and when the police arrived, went down to meet them.

63.     Shortly after the police arrived, Lisette also arrived at the building, and appeared to be furious that Plaintiff had called the police.  Lisette told Plaintiff that she should not talk to the police and that she does not pay her to talk to the police, and instructed her to return to work in another part of the building.

64.     Plaintiff was unable to talk to the police that night because she was instructed by Lisette to go work in another part of the building.

65.     Upon information and belief, Mr. Lainez was ultimately charged and convicted of three counts of misdemeanor sex abuse and one count of simple assault.

66.     Upon information and belief, Lisette told a detective on the scene that she would fire both Plaintiff and Ms. Martinez for "causing trouble" by calling the police.

67.     On or about July 8, 2018, Plaintiff went to work and worked her typical shift.  At the end of her shift, as she was preparing to sign out for the day, she ran into Lisette.  Lisette told Plaintiff that the company did not like that she called the police.  Lisette called Plaintiff and Ms. Martinez "bitches" and said there was no more work for her, and terminated Plaintiff's employment.

68.     Lisette threatened Plaintiff and told her that Mr. Lainez had a "bad family" with a connection to a gang.   Lisette told Plaintiff words to the effect that if she cared about her family, it was best to stay quiet. Plaintiff told Lisette that she planned to "talk," and Lisette responded that Plaintiff should be prepared for the consequences.

69.     Shortly after Lisette terminated Plaintiff's employment, Plaintiff called Defendants' Rockville office to pick up her last check. The receptionist, who identified herself only as Lizbella, told Plaintiff that no one was interested in speaking with her about anything else, but that she should pick up her pay check.

70.      Plaintiff then went to the Rockville office, located at 12312 Wilkins Avenue, Rockville, MD 20852, and the receptionist handed Plaintiff her check.

71.      However, Plaintiff noticed she was missing one weeks' worth of pay for about 20 hours for her last week of work.

72.     Defendant also did not compensate Plaintiff for about 100 hours of work she performed during a two-week period in June 2016 when another employee was out on leave and Plaintiff had covered the employee's shift.  During that two-week period, Plaintiff worked from approximately 6:30 am to 2:30 pm, and then her regular shift from 5:00 to 9:00 pm, Monday

through Friday, for a total of 60 hours per week.  Defendants only compensated her for 20 hours during that entire two-week pay period.

73.     Thus, Plaintiff was not compensated for 120 hours of work, including 20 hours of overtime.

## CAUSES OF ACTION

### Count 1:  Discrimination on the Basis of Sex in Violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq*.

74.     Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though each and every allegation is fully set forth herein.

75.     At all times material to this Complaint, Plaintiff was a member of the class of persons protected by state and federal statutes prohibiting discrimination based on sex.

76.     Defendants, as employers, are subject to the federal statutes prohibiting discrimination, 42 U.S.C. § 2000e-2(a), as amended, and thus, have a legal obligation to provide Plaintiff and all employees a workplace free of unlawful discrimination.

77.     Defendants failed to provide or maintain any anti-harassment policy, in English or Spanish, or make any effort to effectively promulgate a policy, in English or Spanish.

78.     At all times relevant to this Complaint, Plaintiff was subjected to unwelcome sexual advances, touching, groping, and attempted rape by her immediate supervisor, Mr. Lainez, while at work.

79.     At all times relevant to this Complaint, Plaintiff attempted to report this unwelcome conduct to her second-line supervisor, Lisette, who failed to take any meaningful action to abate the harassment, and ultimately terminated Plaintiff's employment shortly after she reported the sexual assault to the police.

80.     At all times relevant to this Complaint, the harassment and assault unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive working environment, to the extent that Plaintiff was afraid to go to work.

81.     Defendants failed to take reasonably adequate steps to prevent discrimination against Plaintiff in the workplace when they became aware that Plaintiff was sexually harassed by her immediate supervisor after Plaintiff reported Mr. Lainez's conduct to her second-line supervisor, Lisette.

82.     Defendants discriminated against Plaintiff through the actions of its supervisors in subjecting her to sexual harassment and assault, and in doing so, have created an illegal and hostile work environment.

83.     Defendants discriminated against Plaintiff because of her sex when it permitted Mr. Lainez to continue to sexually harass and assault her after Plaintiff reported the harassment to Lisette and Defendants failed to take any steps to prevent future harassment and assaults. Defendants also did not provide Plaintiff with any type of written or verbal anti-harassment policy.  These discriminatory actions constitute violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a).

84.     Plaintiff was treated less favorably than other employees who did not report sexual harassment and were not terminated, and less favorably than other male employees.

85.     As a direct result of Defendants' discriminatory actions taken against Plaintiff, Plaintiff has suffered economic harm, emotional distress, anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.  Plaintiff has suffered significant stress and anxiety because of the assaults and harassment that have had lasting effects on Plaintiff's personal relationships and her mental well-being.   Thus, Plaintiff seeks full compensation for

this emotional damage, as well as for her economic losses, including but not limited to loss of wages.

86.     Pursuant to the 1991 Amendments to Title VII, Plaintiff is also entitled to recover punitive damages for Defendants' malicious, intentional, and repeated violations of federal civil rights law.  Thus, Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendants for this illegal conduct and to deter Defendants and other employers from engaging in such conduct, in an amount to be determined by a jury.

87.     Plaintiff also seeks relief, including the implementation of anti-discrimination measures to ensure that Defendants' unlawful employment practices are identified and eliminated, as well as anti-discrimination training for Defendants and all of Defendants' employees and agents, and all other equitable relief to which she is entitled.

88.     Plaintiff is also entitled to recover her attorneys' fees and costs.

## Count 2:  Retaliation in Violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*

89.     Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though each and every allegation is fully set forth herein.

90.     At all times material to this Complaint, Plaintiff was an employee of Defendants within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(f).

91.     At all times material to this Complaint, Plaintiff was a female employee who was subjected to sexual harassment based on her sex, a group protected by the provisions of Title VII, 42 U.S.C. § 2000e-2(a).

92.     At all times relevant to this Complaint, Plaintiff engaged in protected activity within the meaning of  42 U.S.C. § 2000e-2 and § 2000e-3(a) when she rejected her supervisors

advances, reported the sexual harassment and abuse to Lisette, and when she reported Mr.

Lainez's assault of her to the police.

93.     At all times material to this Complaint, Plaintiff suffered an adverse employment

action within the meaning of Title VII, 42 U.S.C. § 2000e-3 when Defendants failed to take steps

to prevent further harassment and the assault by Mr. Lainez on Plaintiff and terminated

Plaintiff's employment after she reported her sexual assault to her second-line supervisor,

Lisette, and to the police.

94.     Defendants explicitly and implicitly discouraged Plaintiff from reporting the

discrimination using threats and intimidation and then punished Plaintiff when she engaged in

protected conduct.

95.     Defendants' stated reason for terminating Plaintiff's employment was because

Plaintiff reported the sexual harassment and assault by her supervisor, Mr. Lainez.

96.     Plaintiff was treated less favorably than other employees who did not report

sexual harassment and were not terminated, and less favorably than other male employees.

97.     Defendants' conduct, acting through their supervisors, constitutes retaliation and

retaliatory harassment, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a).

98.     As a direct result of Defendants' discriminatory actions taken against Plaintiff,

Plaintiff has suffered economic harm, emotional distress, anxiety, depression, social isolation,

humiliation, pain, suffering, and loss of enjoyment of life. Plaintiff seeks full compensation for

this harm.

99.     Pursuant to the 1991 Amendments to Title VII, Plaintiff is also entitled to recover

punitive damages for Defendants' malicious, intentional, and repeated violations of federal civil

rights law.  Thus, Plaintiff is entitled to recover punitive damages in an amount sufficient to

punish Defendants for this illegal conduct and to deter Defendants and other employers from engaging in such conduct, in an amount to be determined by a jury.

100.    Plaintiff also seeks relief, and also the implementation of anti-discrimination measures to ensure that Defendants' unlawful employment practices are identified and eliminated, as well as anti-discrimination training for Defendants and all of Defendants' employees and agents and all other equitable relief to which she is entitled.

101.    Plaintiff is also entitled to recover her attorneys' fees and costs.

**Count 3: Discrimination on the Basis of Sex in Violation of the District of Columbia Human Rights Act, D.C. Code §§ 2-1402.01, *et seq.***

102.    Plaintiff re-alleges and incorporates the allegations set forth the preceding paragraphs as though each and every allegation is fully set forth herein.

103.    At all times material to this Complaint, Plaintiff was a member of the class of persons protected by state and federal statutes prohibiting discrimination based on sex and retaliation, including.

104.    At the times material to this Complaint, Plaintiff was an employee of Defendants within the meaning of the DCHRA, D.C. Code § 2-1401.02(9).

105.    At all times material to this Complaint, Plaintiff was a female subjected to sexual harassment based on her sex, a group protected by the provisions of the DCHRA, D.C. Code § 2-1402.11(a).

106.    Defendants failed to provide or maintain any anti-harassment policy, in English or Spanish, or did not effectively promulgate a policy, in English or Spanish.

107.    At all times relevant to this Complaint, Defendants failed to post or provide information regarding the anti-discrimination provisions of the DCHRA, in violation of § 2-1402.51.

108.    At the times material to this Complaint, Defendants were employers within the meaning of the DCHRA, D.C. Code § 2-1401.02(10), and thus, have a legal obligation to provide Plaintiff and all employees a workplace free of unlawful discrimination.

109.    Defendant subjected Plaintiff to discrimination on the basis of her sex within the meaning of the DCHRA, D.C. Code § 2-1402.11(a)(1), when Mr. Lainez, Plaintiff's immediate supervisor, subjected her to unwelcome sexual advances, touching, and groping, and attempted rape while at work.

110.    At the times relevant to this Complaint, Plaintiff attempted to report this unwelcome conduct to her second-line supervisor, Lisette, who failed to take any meaningful action to abate the harassment and assault, and ultimately terminated Plaintiff's employment days after she reported the sexual assault.

111.    At all times relevant to this Complaint, the harassment and assault unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive working environment, to the extent that Plaintiff was afraid to go to work and be alone in a room with her supervisor.  Plaintiff also suffered significant distress and anxiety because of the assault and harassment that have had lasting effects on Plaintiff's personal relationships and her mental well-being.

112.    Defendants failed to take reasonably adequate steps to prevent discrimination against Plaintiff in the workplace when they became aware that Plaintiff was sexually harassed by her supervisor after Plaintiff rejected Mr. Lainez's advances and after she reported Mr. Lainez's conduct to her second-line supervisor, Lisette.

113.    Defendants discriminated against Plaintiff through the actions of its supervisors in subjecting her to sexual harassment and assault, and in doing so, created an illegal and hostile work environment.

114.    Defendants discriminated against Plaintiff because of her sex when it permitted Mr. Lainez to continue to sexually harass Plaintiff after she reported the harassment to Lisette, and Defendants failed to take any steps to prevent the subsequent sexual assault.  Defendants also did not provide Plaintiff with any type of written or verbal anti-harassment policy. These discriminatory actions constitute violations of D.C. Code. §§ 2-1402.11 *et seq.*

115.    As a direct result of Defendants' discriminatory actions taken against Plaintiff, Plaintiff has suffered economic harm, emotional distress, anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.  Plaintiff has suffered significant stress and anxiety because of the assaults and harassment that have had lasting effects on Plaintiff's personal relationships and her mental well-being.

116.    Plaintiff is also entitled to recover punitive damages for Defendants' malicious, intentional, and repeated violations of federal civil rights law.  Thus, Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendants for this illegal conduct and to deter Defendants and other employers from engaging in such conduct, in an amount to be determined by a jury.

117.    Plaintiff also seeks relief, and also the implementation of anti-discrimination measures to ensure that Defendants' unlawful employment practices are identified and eliminated, as well as anti-discrimination training for Defendants and all of Defendants' employees and agents and all other equitable relief to which she is entitled.

118.    Plaintiff is also entitled to recover her attorneys' fees and costs.

**Count 4:  Retaliation in Violation of the District of Columbia Human Rights Act, D.C. Code §§ 2-1402.01, *et seq.***

119.    Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though each and every allegation is fully set forth.

120.    At all times material to this Complaint, Defendants were employers within the meaning of the DCHRA, D.C. Code § 2-1402.02(10).

121.    At all times material to this Complaint, Plaintiff was an employee within the meaning of the DCHRA, D.C. Code § 2-1402.02(9).

122.    At all times material to this Complaint, Plaintiff was a female employee who was subjected to sexual harassment based on her sex, a group protected by the provisions of the DCHRA, D.C. Code § 2-1402.01, *et seq.*

123.    At all times relevant to this Complaint, Plaintiff engaged in protected activity within the meaning of the DCHRA, D.C. Code §§ 2-1402.11 and 1402.61, when she rejected her supervisor's advances, reported the sexual harassment to Lisette, and when she reported Mr. Lainez's assault of her and her co-worker to the police,.

124.    At all times material to this Complaint, Plaintiff suffered an adverse employment action within the meaning of the DCHRA when Defendants failed to take steps to prevent further harassment and assault by Mr. Lainez and terminated Plaintiff's employment just one day after Plaintiff reported the sexual harassment.

125.    Defendants explicitly and implicitly discouraged Plaintiff from reporting the discrimination using threats and intimidation and then punished Plaintiff when she engaged in protected conduct.

126.    Defendants' stated reason for terminating Plaintiff's employment was because Plaintiff reported the sexual harassment and assault by her supervisor, Mr. Lainez.

127.    Plaintiff was treated less favorably than other employees who did not report sexual harassment and were not terminated, and less favorably than other male employees.

128.    Defendants' conduct, acting through their supervisors, constitutes retaliation and retaliatory harassment, in violation of the DCHRA, D.C. Code § 2-1402, *et seq.*

129.    As a direct result of Defendants' discriminatory and retaliatory actions taken against Plaintiff, Plaintiff has suffered economic harm, emotional distress, anxiety, depression, social isolation, humiliation, pain, suffering, and loss of enjoyment of life.  Plaintiff seeks full compensation for this harm.

130.    Plaintiff is also entitled to recover punitive damages for Defendants' malicious, intentional, and repeated violations of federal civil rights law.  Thus, Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendants for this illegal conduct and to deter Defendants and other employers from engaging in such conduct, in an amount to be determined by a jury.

131.    Plaintiff also seeks relief, including the implementation of anti-discrimination measures to ensure that Defendants' unlawful employment practices are identified and eliminated, as well as anti-discrimination training for Defendants and all of Defendants' employees and agents and all other equitable relief, to which she is entitled.

132.    Plaintiff is also entitled to recover her attorneys' fees and costs.

**Count 5: Violations of the FLSA, 29 U.S.C. §§ 201, et seq.**

133.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the FLSA.

134.    Plaintiff was employed by Defendants to perform janitorial and cleaning services.

135.     Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203(d), and at the times relevant to this Complaint, Defendants exercised the power to hire and fire Plaintiff, direct and supervise Plaintiff's work, and bind and set wage and hour policies applicable to Plaintiff.

136.     Defendants were and are aware that the FLSA, 29 U.S.C § 206, requires employers to pay all employees the statutory minimum wage for all hours worked.

137.     Defendants were and are aware that the FLSA, 29 U.S.C. § 207(a), requires employers to pay all employees overtime wages at one-and-a-half times their regular rate of pay for hours worked in excess of 40 hours each workweek.

138.     During the applicable statutory period, Defendants failed to pay Plaintiff a minimum wage for all hours worked, in violation of 29 U.S.C. § 206.

139.     During the applicable statutory period, Defendants also failed to pay Plaintiff the appropriate statutory rate for all hours worked in excess of forty hours per week, in violation of 29 U.S.C. § 207.

140.     Specifically, Defendants did not compensate Plaintiff for her last week of work, during which she worked approximately 20 (twenty) hours. In addition, Defendants did not compensate Plaintiff for 100 (one hundred) hours of work performed during a two-week period in June 2016 when she filled in for an employee who was out of the workplace. Plaintiff worked 60 hours each of those weeks, for a total of 120 hours worked, but Defendants only paid her for 20 of those hours.

141.     Defendants did not post or keep posted a notice explaining the FLSA in a conspicuous place so as to permit Plaintiff to readily observe a copy, as required by 29 C.F.R. § 516.4.

142.    Defendants' failure to pay Plaintiff's wages as required by law was not the result of a bona fide dispute.

143.    Defendants' violations of the FLSA were willful and intentional.  Accordingly, a three-year statute of limitations governs this claim pursuant to 29 U.S.C. § 255(a).

144.    At all times relevant to this Complaint, Plaintiff was a non-exempt employee within the meaning of the FLSA and did not meet the requirements for exemption from the FLSA pursuant to 29 C.F.C. §§ 541, *et seq*.

145.    Defendants have not acted in good faith or with reasonable grounds to believe that their actions and omissions were not in violation of the FLSA.  Plaintiff seeks to recover all unpaid minimum wages and liquidated damages in an amount equal to the unpaid wages described above, plus costs and reasonable attorneys' fees incurred in the filing and prosecution of this action, pursuant to 29 U.S.C. § 216(b).

146.    Alternatively, should the Court find that Defendants have not acted willfully in failing to pay minimum and overtime wages, Plaintiff is entitled to an award of prejudgment interest on all unpaid wages at the applicable legal rate.

**Count 6: Violation of the District of Columbia Minimum Wage Revision Act,
D.C. Code §§ 32-1001, et seq.**

147.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the DCMWRA.

148.    At the times relevant to this Complaint, Defendants were Plaintiff's employer within the meaning of D.C. Code § 32-1002(3).

149.    Defendants were and are aware that the DCMWRA, D.C. Code § 32-1003(a), requires employers to pay all employees the statutory minimum wage for all hours worked.

150.    Defendants were and are aware that the DCMWRA, D.C. Code § 32-1003(c), requires employers to pay all employees overtime wages at one-and-a-half times their regular rate of pay for hours worked in excess of 40 hours each workweek.

151.    Defendants' failure to pay Plaintiff's wages as required by law was not the result of a bona fide dispute.

152.    Defendants' failure to pay Plaintiff's wages as required by law was willful and in bad faith.

153.    At the times relevant to this Complaint, Defendants failed to pay Plaintiff the required statutory minimum wage for all hours worked, in violation of D.C. Code § 32-1003(a).

154.    During the applicable statutory period, Defendants failed to pay Plaintiff minimum and overtime wages for the hours she worked in excess of forty hours per week, in violation of D.C. Code § 32-1003(c).

155.    Specifically, Defendants did not compensate Plaintiff for 120 (one hundred and twenty) hours of work.  They did not compensate her for her last week of work, during which she worked approximately 20 (twenty) hours. In addition, Defendants did not compensate Plaintiff for 100 (one hundred) hours of work performed during a two-week period in June 2016 when she filled in for an employee who was out of the workplace. Plaintiff worked 60 hours each of those two weeks, for a total of 120 (one hundred and twenty) hours worked during that period, but Defendants only paid her for 20 of those hours.

156.    Defendants have not acted in good faith or with reasonable grounds to believe their actions and omissions were not in violation of the DCMWRA, nor did they promptly pay the full amount of wages that Plaintiff is owed.

157.    Defendants did not post a copy of the relevant wage and hour laws or regulations in a conspicuous and accessible place in the premises at which the Plaintiff was employed, as required by D.C. Code § 32-1009.

158.    Plaintiff is entitled to recover all unpaid wages, statutory penalties, liquidated damages in an amount equal to treble the amount of unpaid wages, and reasonable attorneys' fees and costs pursuant to D.C. Code § 32-1012(b) and D.C. Code § 32-1308.

**Count 7: Violation of the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32-1301, et seq.**

159.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the DCWPCL.

160.    At times material to this Complaint, Defendants failed to pay Plaintiff a minimum wage for all hours worked, in violation of D.C. Code § 32-1003(a) when it failed to pay her for 20 hours of work.

161.    At times material to this Complaint, Plaintiff worked over forty hours a week. Defendants failed to pay Plaintiff overtime wages for the hours she worked in excess of forty per week, in violation of D.C. Code § 32-1003(c).

162.    Specifically, Defendants did not compensate Plaintiff for 120 (one hundred and twenty) hours of work.  They did not compensate her for her last week of work, during which she worked approximately 20 (twenty) hours. In addition, Defendants did not compensate Plaintiff for 100 (one hundred) hours of work performed during a two-week period in June 2016 when she filled in for an employee who was out of the workplace. Plaintiff worked 60 hours each of those two weeks, for a total of 120 (one hundred and twenty) hours worked during that period, but Defendants only paid her for 20 of those hours.

163.     Defendants were and are aware that the DCWPCL, D.C. Code § 32-1303, requires employers to pay an employee who it has discharged all wages earned not later than the working day following the discharge and that, if an employee quits or resigns, the employer shall pay the employee's wages due upon the next regular payday or within seven days of the date of quitting or resigning, whichever is earlier.

164.     At the times material to this Complaint, Defendants failed to pay Plaintiff, upon the termination of her employment, all required minimum and overtime wages earned, in violation of D.C. Code § 32-1303.

165.     Defendants did not post a copy of the relevant wage and hour laws or regulations in a conspicuous and accessible place in the premises at which the Plaintiff was employed, as required by D.C. Code § 32-1009.

166.     Plaintiff is entitled to receive reasonable attorneys' fees and costs, back wages, liquidated damages equal to treble unpaid wages, statutory penalties, and such legal and equitable relief as may be appropriate pursuant to D.C. Code § 32-1308(a)(1)(A).

## Count 8: Negligent Supervision

167.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claim for negligent supervision.

168.     At all times material to this Complaint, Defendants knew or should have known that Mr. Lainez behavior was illegal and that he and posed a threat to Plaintiff and other employees because Plaintiff reported his harassing behavior to Lisette, as well as his subsequent sexual assault of Plaintiff on July 6, 2016.  Defendants were also aware of Mr. Lainez's threatening behavior because Plaintiff's co-worker had also reported to Lisette that Mr. Lainez had assaulted her on or about June 30, 2016.

27

169.   At all times material to this Complaint, Defendants knew or should have known that Mr. Lainez posed a threat to Plaintiff and other employees because, upon information and belief, Lisette knew about his connection to a known gang, and threatened Plaintiff with that connection to dissuade her from complaining about Mr. Lainez's behavior.

170.   At all times material to this Complaint, Defendants failed to adequately supervise Mr. Lainez because they failed to take any meaningful actions to prevent subsequent sexual assaults by Mr. Lainez on Plaintiff.  Instead of addressing the complaints of Plaintiff and her coworker, Defendants instructed Plaintiff to return to work in the same conditions that led to the repeated harassment and, ultimately, sexual assault.

171.   Plaintiff is entitled to receive compensatory and punitive damages for this tort, including any legal and equitable relief as may be appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court adjudge the following:

A.   That Defendants be found in violation of the Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the District of Columbia Human Rights Act, D.C. Code §§ 2-1402.01, *et seq.* ("DCHRA"); and

B.   That Defendants be found in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201*, et seq.* ("FLSA"); the District of Columbia Minimum Wage Revision Act, D.C. Code §§ 32-1001, *et seq.* ("DCMWRA"); the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32-1301, *et seq.* ("DCWPCL"); and

C.   That Defendants be found to have negligently supervised its employee; and

D.      That Defendants be ordered to pay Plaintiff an amount sufficient to fully compensate her (including tax consequences) for her economic losses, including lost wages and benefits, interest on the back pay, and compensation for any special damages sustained as a result of the Defendant's unlawful action; and

E.      That Defendants be ordered to pay compensatory (non-economic) damages, in an amount to be determined at trial;

F.      That Defendants be ordered to pay punitive damages, in an amount to be determined at trial;

G.      Order Defendants to pay Plaintiff the unpaid wages owed to her pursuant to 29 U.S.C. §§ 206 and 207(a) respectively, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

H.      Order Defendants to pay Plaintiff all unpaid wages, plus an amount of liquidated damages equal to treble the unpaid wages pursuant to D.C. Code § 32-1012(b) and D.C. Code § 32-1308(a)(1)(A);

I.      That Defendants be ordered to pay reasonable litigation costs, expert fees, and reasonable attorneys' fees; and,

J.      That the Court grant any other such relief that the Court may deem just and equitable, and as the nature of this cause may require.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, the Plaintiff demands a jury trial as to all issues so triable.

Dated: January 24, 2019                    Respectfully submitted,


                                           __/s/_____
                                           Jillian Moo-Young, Esq. (Bar No. 1045088)
                                           Gary M. Gilbert, Esq. (Bar No. MD15808)
                                           *Attorneys for the Plaintiff*
                                           Gilbert Employment Law, P.C.
                                           1100 Wayne Ave., Ste. 900
                                           Silver Spring, MD 20910
                                           Tel: (301) 608-0880; Fax: (301) 608-0881
                                           jmooyoung-efile@gelawyer.com
                                           gary-efile@gelawyer.com